JOHN O'FALLON, JR., Plaintiff in Error, *v.* THOMAS J. KENNERLY *et al.*, Defendants in Error.

1. *Sale — Real estate — Deed of trust—Re-sale.*—At a sale of real estate under a deed of trust, when the highest bidder fails to pay the purchase money, the property may be re-sold by the trustee. (44 Mo. 145; 38 Mo. 469.)

2. *Equity—Sale—Specific performance, when granted—Executory contract.*— Equity may decree a specific performance of a contract for the sale of property, notwithstanding a default in payment upon the day specified, and in many cases where there is an express stipulation of forfeiture. But this relief has always been afforded upon equitable principles, and some circumstances must exist to show that the party is justly entitled to it. There is no

respectable case, where the contract is wholly executory and the time specific when the purchase money shall be paid, with an express condition of forfeiture if not paid at that time, and where the purchaser has never taken possession or expended anything on the premises, but waits for several years after the payments are due, and until there is a rise in value, in which the purchaser can obtain relief.

3. *Bonds—Conveyance of real estate—Payment—Forfeiture—Waiver.*—Where a bond is given to convey real estate, conditioned on the payment of certain money at a specified time, even though it contains an express stipulation of forfeiture in case of non-payment, yet if part payment be made and accepted after the time fixed, the forfeiture is waived; and upon tender of the balance, the purchaser has a clear equity, but without such tender he has no equity.

### Appeal from St. Louis Circuit Court.

This was a suit to enforce the specific performance of a bond to convey certain real estate. The facts sufficiently appear in the opinion of the court, and in Dover v. Kennerly, 44 Mo. 145, and 38 Mo. 469.

*Thomas, Whittelsey,* and *Beal,* for plaintiff in error.

In equity, time is not of the essence of the contract; and equity will relieve against a non-compliance with the terms as to time, where it would be inequitable for a party to take advantage of the forfeiture. (Seaton v. Slade, 7 Ves. 265, and notes; 2 White & Tud. L. C. Eq. 377, 398; Langworth v. Taylor, 14 Pet. 372; 2 Sto. Eq. 776, and notes; Edgerton v. Peckham, 11 Paige, 352.) But although time, by agreement of parties, be made essential, yet the condition may be waived by the parties; and if waived, specific performance will be decreed. (Seaton v. Slade, *supra;* Hudson v. Bartram, 3 Mad. Ch. 440; Rodiff v. Warrington, 12 Ves. 326.)

*Fletcher* and *Green,* and *Cline, Jamison & Day,* for defendants in error.

A court of equity will not relieve a party against the consequences of a non-compliance with a condition precedent. (Barrett v. Passumpsic Turnpike Co., 15 Verm. 757; Wells v. Smith, 2 Edw. Ch. 78; Chipman v. Thompson, Walker's Ch. 405; Spriggs v. Albin, 6 J. J. Marsh. 158; Bucks v. Jouitt's Adm'r,

3 Litt. 229.) Time is as fully expressed as the essence of the contract, in this case, as the nature and circumstances of the contract required that it should be. (2 Sto. Eq. Jurisp. § 776; 1 Sugd. on Vendors, 339.)

BLISS, Judge, delivered the opinion of the court.

One J. B. Dover was indebted to the plaintiff in six promissory notes for $383.33 each, dated February 2, 1858, due, with interest, in from one to six years respectively, which notes were secured by deed of trust upon the property in controversy. Dover paid the first two notes, and the plaintiff sold to defendants the third and fourth. The notes thus sold to defendants not being paid, they directed the trustee to offer the property for sale, and the plaintiff bid it off, but was unable to pay his bid, whereupon it was again offered, and bid in by the defendants for $530, which sum was applied in payment in full of one of the notes, and a small balance upon the other. Soon after this sale, upon complaint of loss by the plaintiff, the defendants told him that all they wanted was the money advanced for the notes they purchased, with interest, etc., and offered, if he would repay the same, to sell him the property; and accordingly, on the 6th of May, 1861, they executed to the plaintiff's trustee a bond to convey him the property and deliver up the fourth note of Dover, which he had sold them, upon condition that he should pay them $507 on the 12th of June thereafter, and $408.24 on the 2d of February, 1862. This bond was given to John O'Fallon, for the use of the plaintiff, and assigned to him before suit by the heirs of the obligee. The $507 represented Dover's third note, with interest, and costs and expenses, and the $408.24 represented the fourth note. There was no express obligation on the part of the obligee of the bond, or of any one else, to pay these sums; but the bond contained a stringent claim of forfeiture if they were not paid. Neither of these payments were made, although the plaintiff claims that in June, 1862, the second amount was included in a transaction between the defendants and Sophia O'Fallon, for the use of Charles O'Fallon, and paid July 1, 1863. There is much obscurity in the testimony as preserved in relation to this

transaction, and its character does not clearly appear. If the defendants actually received a payment upon the bond long after it was due, it would play a very important part in the claim of the plaintiff by preserving the vitality of the instrument. Whatever the provisions of the bond in regard to forfeiture for want of punctuality, it is clear that if the obligor, after default, actually received a payment upon it, the forfeiture was waived and the time extended.

The petition in this case is mixed, and it is quite uncertain whether the plaintiff relies upon his general equities as holder of the fifth and sixth notes given him by Dover, secured by the trust deed and still unpaid, or whether upon his rights as beneficiary of the bond. If the sale by the trustee is to be held valid, the property became vested in the defendants, relieved of all the plaintiff's equities, and he must rely alone upon the bond. The validity of that sale can be no longer questioned, as it has been twice sustained by this court—once in Dover v. Kennerly *et al.*, 38 Mo. 469, and again in the same case, decided at the October term, 1868, 44 Mo. 145 — and we can only consider the rights of the plaintiff under the bond. The plaintiff alleges that it was given in pursuance of a verbal agreement made before the sale, that the Kennerlys alone should bid, and should then give him further time, or rather the benefit of the bid. Without giving any opinion upon the legal effect of such agreement, it can not be regarded as proved, inasmuch as it depends alone upon the oath of the plaintiff, who is expressly contradicted by the testimony of the defendants, whose testimony is indirectly confirmed by that of Dover, who was introduced by the plaintiff.

There is no doubt that equity may decree a specific performance of a contract for sale of property, notwithstanding a default in payment upon the day specified. The books are full of instances where such relief has been granted, and in many cases where there is an express stipulation of forfeiture. But this relief has always been afforded upon equitable principles. It will by no means be given as a matter of course, but some circumstances must exist to show that the party is justly entitled to it; as, for instance, where the purchaser has gone into possession

and made valuable improvements or paid a considerable portion of the purchase money, or the default is occasioned by the act of the vendor, or he has waived it by receiving part of the purchase money, or otherwise, or where any other circumstances exist that would render a forfeiture inequitable. But I have never seen a respectable case, where the contract is wholly executory and the time specific when the purchase money shall be paid, with an express condition of forfeiture if not paid at the time, and where the purchaser has never taken possession or expended anything upon the premises, but waits for several years after the payments are due, and until there is a rise in value, in which he has obtained this relief.

The whole equity of this case, so far as it seeks specific performance, depends upon the truth of the plaintiff's claim that the second payment was made by him, or on his behalf, after the whole was due, and accepted as such by the defendants. If that claim be true, the forfeiture is waived, and, upon tender of the balance, the plaintiff has a clear equity ; but upon this point the evidence is far from clear. The plaintiff testifies that he paid to defendants the consideration of a certain bond for the sale of other land, given by them to Mrs. Sophia O'Fallon, amounting to about $2,700, which sum included the second payment conditioned in defendants' bond to him. He fails to explain how he came to pay this second bond ; how this payment in his own bond came to be embraced in it ; why he made his second payment first, or what interest he had in the latter bond. But the testimony of Wm. C. O'Fallon and the copy of the bond may throw a little light upon it. From that testimony it appears that the bond to Sophia O'Fallon was given for the benefit of Charles O'Fallon, who was an indorser of the Dover notes sold defendants, and was liable upon them ; so that when the defendants gave Sophia O'Fallon this bond for the use of Charles O'Fallon, the latter was owing them the amount of the fourth Dover note, less the small indorsement, which would be a good reason for including it in consideration of the bond. This bond was executed some months after all the payments were due on the one given to plaintiff, and its consideration was to be paid over a year

after its execution.   It is not shown that it had any connection whatever with the first bond; but the fact that it included this Dover note is not only perfectly consistent with, but rather suggests, the idea that the plaintiff was unable to, or had concluded not to, pay up the consideration of the first bond, and that the defendants looked to Charles O'Fallon for the payment of so much of their Dover notes as were not paid by their bid for the land. It is very likely that this last bond was paid by or through the plaintiff, as he says ; for the copy in the bill of exceptions contains an assignment from Sophia O'Fallon to his trustee, and he perhaps purchased the land embraced in it, and paid the price agreed upon.   If this were so, no part of this payment could be applied upon the first bond without the consent of the obligors, for each sale was independent, for distinct parcels of land; and, in the meagerness of the evidence, the only explanation of the transaction I can make is that plaintiff abandoned his purchase evidenced by the first bond, and afterwards concluded to buy the land sold to Sophia O'Fallon ; or that her assignment to his trustee was a sham, designed to enable him to avail himself of her payment of that part of the fourth Dover note embraced in the consideration of defendants' bond to her.   It should be remarked that defendants deny that any payment whatever has been made on their bond to plaintiff's trustee, upon which this suit is brought.

But there is another fatal objection to the plaintiff's equity. No tender of the amount due upon the bond has been made.   The plaintiff swears that he was ready to pay and offered to pay, but admits, on cross-examination, that he has never tendered the money, and gives no sufficient excuse for not doing so, while the defendants swear that he has never offered them anything.   If time is not of essence, payment certainly is, and the purchaser can have no equity without offering to pay the purchase money.

The judgment of the Circuit Court was for the defendants, which was properly affirmed by the District Court.   The other judges concur.