Helen M. LONG, Respondent,

v.

Betty SMITH, Appellant.

No. WD 41023.

Missouri Court of Appeals, Western District.

Aug. 15, 1989.

Londa S. Shabazz, Kansas City, for appellant.

DeLoss McKnight, III, Kansas City, for respondent.

Before GAITAN, P.J., and MANFORD and ULRICH, JJ.

MANFORD, Judge.

This case involves a claim by Helen Long against Betty Smith for rent and possession of property. Long filed a Landlord's Complaint under Chapter 535, RSMo 1986, Landlord–Tenant Actions, alleging that Smith purchased property from her under contract for deed, but became a tenant pursuant to the forfeiture clause of the contract. Smith filed a counterclaim for specific performance and for damages. After trial to the circuit court sitting without a jury, the court entered judgment in favor of Long and awarded her damages in the amount of $5,850, and possession of the property. The court further entered judgment against Smith on the counterclaim. Smith appeals.

Smith raises two points on appeal which charge, in summary, that the trial court erred in entering the judgment because (1) Long's petition failed to state a claim upon which relief can be granted, and (2) the judgment is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law. The judgment is affirmed.

The pertinent facts are as follows.

Appellant Smith became interested in purchasing property owned by Long and located at 5015–5017 Paseo Boulevard in Kansas City, Missouri. In August of 1983, the parties orally agreed that appellant Smith could live at the property for one year before entering into a contract for deed. During this period, appellant Smith paid Long $450 per month as rent. The agreement was that at the end of the one-year period, the parties would execute a contract for deed and appellant Smith would receive a $3,000 credit towards the $20,000 purchase price of the property.

In August of 1984, after renting the property for one year, appellant Smith expressed her desire to enter into the contract for deed. However, the contract was not actually executed until almost one year later, on June 12, 1985. The contract for deed provided that Long would sell appel-

lant Smith the property subject to a first deed of trust recorded. Appellant Smith promised to pay $20,000 as follows: $3,000 in hand and $17,000 in monthly payments of $450 on the third day of each month with 10% annual interest. The contract was validated as of August 1, 1984 and the parties understood that appellant Smith would receive credit for all payments made from August 1, 1984.

Because Long had previously encumbered the property, the contract for deed was modified by a handwritten provision which states:

This contract for deed will be in effect until party of the first part [Long] has satisfied her first mortgage of $5000 with mortgagor, approximately 3 yr. 2 mo. 23 days, and at that time, party of the first part [Long] will transfer contract for deed to first mortgage to party of the second part [Smith], and will continue to carry same $ $450 per month $ 10% until balance of $17,000 is paid. Taxes, insurance and maintainence (sic) to be assumed by party of the second part, her payments to run approximately 3 yr. 4 mo. 2 days. Warranted deed and title to be delivered when final payment is made.

Appellant Smith kept the one original contract for deed and amortization schedule. These documents were placed in an envelope at Smith's house. Long initialed the schedule each time Smith made a payment.

The contract contains a forfeiture provision which states:

It is expressly understood and agreed that Time Is the Essence of This Contract and that if the buyer shall fail to pay any installment, interest, taxes, lien or other payment for a period of *thirty* days after said payment shall become due and payable, then the amount theretofore paid by the buyer shall, at the option of the seller, be forfeited to the seller as liquidated damages for breach of this contract, and on such default, it will be lawful and proper for the seller, or its assigns, without notice, to take possession of said premises, and it is further agreed that upon such default the buyer shall then become a tenant of the seller as tenant from month to month and agrees to pay *four hundred fifty* Dollars per month as rent for such premises, said rent becoming due and payable monthly in advance.

Appellant Smith often made partial monthly payments. Long went to the property two or three times a month to collect from Smith. Both parties testified that Smith made partial payments, but never made late payments because she paid the full amount within the 30-day grace period, before the end of each month. The amortization schedule was initialled to record payments. However, appellant Smith also requested receipts indicating that the installment payments were rent payments so Smith could show the receipts to her social security caseworkers. Long understood that appellant received social security income and requested the transaction be completed in the form of a contract for deed so it would appear that she rented, but did not own, property.

The contents of the envelope containing the documents were taken from Smith's house in late-1986. Smith also testified that she asked Long for another contract for deed, but never received one. Long created a schedule for appellant showing payments that remained under the contract.

The principal factual controversy at trial concerned the events of default. Long testified that appellant Smith never paid real estate taxes or insurance costs, and Long herself paid these expenses because Smith refused to do so. Conversely, appellant Smith testified that when the contract for deed was executed, she paid Long $960 in cash for back taxes and insurance.

The record contains conflicting evidence regarding Smith's default in monthly payments. Long's testimony was that she received monthly payments through July, 1987. On or about August 3, 1987, Long went to the property to ask Smith for the August payment. Smith told Long that she was not going to make repairs, did not intend to pay taxes or insurance, did not

want the house, but did not intend to move. According to Long, Smith offered to accept $5,000 in order to move out and give the property back to Long. Long further testified that in November of 1987, she went back to see if Smith had changed her mind. Smith met Long at the door, said, "I told you I was not going to pay you", and shut the door. Long did not receive any payments from Smith thereafter.

In contrast, Smith testified that she made all monthly payments through October, 1987. She refused to make monthly payments after October, 1987 because Long would not present evidence, as required in the handwritten provision in the contract, that Long paid the $5,000 mortgage on the property. Smith believed the mortgage was to be fully satisfied by October or November of 1987. Smith testified that although the amortization schedule showed the last installment payment was to be made in May, 1988, she also believed that pursuant to the contract her last payment was to be in November, 1987. Smith said Long refused to show her deeds and title to the property. Therefore, Smith refused to make further payments because she did not have the contract for deed which would evidence the fact that she was purchasing the property.

Smith further testified that she attempted three times to obtain a loan to pay Long in full and make repairs to the property. Smith believed the house needed ten to fifteen thousand dollars worth of repairs. Smith applied for the third loan after Long filed this lawsuit. Although Smith believed that Long prevented issuance of the loan because Long told the lending institution that Smith was merely a tenant, one letter read into the record indicates that Smith's February, 1988 loan application was denied because the lender was unable to determine that Smith had sufficient income for monthly loan payments.

Finally, the amortization schedule, which was admitted to the record by Long, indicates that 35 of 46 monthly payments (those up to but not including July, 1987) have been initialized, presumably indicating payments received. The schedule also indicates that an ending balance of $4,117.29 would exist after receipt of the July, 1987 monthly payment. It is not clear from an examination of the schedule whether monthly payments were received for July, 1987 or thereafter.

Upon notification that Long's action for rent and possession had been filed in December, 1987, appellant Smith tendered to Long, through her attorney at the first court appearance, an offer to pay the balance of the purchase price. Smith testified that the offer was not accompanied by cash, check or money order. Smith was asked during trial how much she would have to pay Long if specific performance of the contract for deed were ordered by the court. Smith responded that she had no money with which to make a tender and didn't feel like she should have to pay Long anything because of the trouble Long put her through.

Review of this court-tried case is governed by Rule 73.01, V.A.M.R. as construed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, the judgment of the trial court will be sustained by this appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Furthermore, the judgment in a court-tried case is to be affirmed if it could properly have been reached on any reasonable theory. *Nail Boutique, Inc. v. Church,* 758 S.W.2d 206, 208 (Mo.App. 1988).

■ In her first point on appeal, appellant Smith contends that the trial court erred in granting judgment in favor of Long because Long's petition failed to state a cause of action upon which relief could be granted. More specifically, Smith alleges that the petition failed to show the existence of a landlord and tenant relationship, a relationship which must be shown in a landlord-tenant action under Chapter 535, RSMo 1986.

Smith's first allegation lacks merit. A reading of the petition confirms that Long appropriately stated that Smith occupied the premises as a tenant of Long. The

petition also stated that the premises were originally sold to Smith on a contract for deed, and because Smith did not make payments for the months of August, 1987 through December, 1987, pursuant to the contract, a forfeiture of the contract has occurred and Smith has become a tenant of Long.

■ Smith further contends that the allegation in Long's petition that a forfeiture had occurred, without alleging notice of intent to declare a forfeiture, is not sufficient to entitle Long to a judgment. This contention also lacks merit. Section 535.-020, RSMo 1986 requires the landlord to file a statement setting forth the terms on which the property was rented, the amount of rent actually due to the landlord, that the rent has been demanded from the tenant, and substantially describing the property rented or leased. Long's petition complies with all of these statutory requirements. Indeed, the petition states that the sum due Long for such rents has been demanded of Smith and payment has not been made.

Appellant Smith's point one is ruled against her.

In her second point on appeal, Smith contends that the trial court erred in entering judgment for possession and rent because the judgment violates all prongs of *Murphy v. Carron.* Smith presents four arguments which will be addressed separately.

■ Smith first argues that the court erroneously applied the law because she was in the position of a mortgagor and, therefore, Long could not enforce her rights through an action under Chapter 535, RSMo 1986. This court rejects Smith's first argument. Although a contract for deed and a mortgage serve similar economic functions, (i.e., the financing by the seller of real estate of an unpaid portion of the purchase price), the purchaser under a contract for deed is not a mortgagor. A contract for deed, also referred to as an installment land sale contract, is used as a substitute or alternative to a mortgage or deed of trust. Under a contract for deed, the buyer of real estate makes a

down payment and agrees to make remaining payments at a specified rate of interest in installments to the seller. The buyer normally takes possession of the property at the time the contract for deed is made. The seller agrees to convey the property to the buyer by delivering a warranty deed upon completion of the installment payments. *See Community Title Co. v. Roosevelt Fed. Sav.,* 670 S.W.2d 895, 898 (Mo.App.1984). Unlike a mortgagor who holds legal title to the mortgaged property, the buyer under a contract for deed does not receive legal title to the property until the contract price is paid and a warranty deed delivered by the seller. Prior to this event, the buyer has only an equitable interest in the property.

Contracts for deed typically contain forfeiture clauses which provide that time is of the essence and that when a buyer defaults, the seller has the option to declare the contract terminated, retake possession of the premises, and retain all previous payments as liquidated damages. Contracts for deed have traditionally been governed by general principles of contract law and courts have enforced forfeiture clauses on the assumption that they are carrying out the intent of the parties to the contract. *See O'Fallon v. Kennerly,* 45 Mo. 124, 127 (1869).

In Missouri, there is no legislative limitation on the forfeiture remedy in a real estate financing involving contracts for deed. However, courts in Missouri have judicially limited the forfeiture remedy by employing equitable principles, since specific performance of the contract for deed is a remedy generally sought. Specific performance of a contract for deed has been granted to defaulting buyers on the grounds of reasonableness or fairness, thereby allowing tardy payment of the full purchase price. *See Nigh v. Hickman,* 538 S.W.2d 936 (Mo.App.1976); *Parkhurst v. Lebanon Pub. Co.,* 356 Mo. 934, 204 S.W.2d 241 (1947). Forfeitures are highly disfavored by the law and the courts also look to find a waiver or estoppel to assert prompt payment on the date specified in the contract. *See Plymouth Securities*

*Co. v. Johnson,* 335 S.W.2d 142 (Mo.1960); *Bogad v. Wachter,* 365 Mo. 426, 283 S.W.2d 609 (1955). Other courts have avoided the result of a forfeiture by creating the concept of "equitable redemption." These courts have found that equity's ability to cure unfairness in the context of a contract for deed is analogous to the right of a mortgagor to redeem under a mortgage. *See Cochran v. Grebe,* 578 S.W.2d 351, 353 (Mo.App.1979). But, just as a debtor under a deed of trust must tender full payment of the total amount due in order to accomplish statutory redemption, so also the purchaser under a contract for deed must make a similar tender of the full purchase amount in order to be entitled to specific performance. *Id.*

Although Missouri courts have used mortgage law concepts in addressing the equities of ordering specific performance of a contract for deed, Missouri courts have not yet gone further and treated a contract for deed as a conventional mortgage. Missouri courts continue to allow the seller to exercise the forfeiture clause of a contract for deed, subject to equitable protection.

■ For the above reasons, this court rejects appellant Smith's first argument that the trial court erroneously applied the law. Smith did not occupy the position of mortgagor; Smith did not hold legal title to the property and subject to the forfeiture clause, became a tenant upon default.

■ Although not fully developed in the brief, appellant Smith could be understood to argue that the trial court erred in refusing to grant specific performance of the contract under the equitable redemption theory which analogizes a purchaser under a contract for deed to a mortgagor. This court finds no such error.

The determination of whether specific enforcement of a contract will be decreed rests in the sound discretion of the trial court. *Flath v. Bauman,* 722 S.W.2d 125, 128 (Mo.App.1986). Specific performance should not be decreed on behalf of a vendee unless the vendee is able and willing to perform. *Key v. Gregory,* 553 S.W.2d 329, 332 (Mo.App.1977); citing *Domyan v. Dornin,* 356 S.W.2d 70, 72 (Mo.

1962). Under the equitable redemption concept as developed in *Cochran v. Grebe,* the purchaser under a contract for deed must make tender of full performance to be entitled to specific performance. The record contains substantial evidence from which the trial court could have concluded that although Smith made an offer to tender performance via her attorney, on the date of trial she was both unable and unwilling to tender full performance. Indeed, she told the court she had no money with which to make a tender and did not feel she should have to pay Long anything. The trial court did not abuse its discretion in refusing to grant specific performance of the contract for deed.

■ In her second argument Smith asserts waiver, arguing that even if she defaulted in making monthly payments, Long waived the forfeiture provision by accepting late and partial payments. Smith concludes that Long could not declare a forfeiture without notice. This court rejects Smith's second argument.

■ Even when time is of the essence of the contract for the sale of land, the vendor may waive the condition or requirement in that respect and he does so by receiving payments after default. *Bogad v. Wachter,* 283 S.W.2d at 614. Forfeitures are not favored and, if the contract does not provide for it or if time is of the essence but has been waived, it is necessary that the vendor give the vendee notice of his intention to forfeit the contract before the vendee may be deprived of equitable relief against the forfeiture. *Id. See also Beck v. Strong,* 572 S.W.2d 484, 489 (Mo.App.1978).

Factual issues are deemed to have been found in accordance with the judgment of the trial court in absence of a request for specific findings of fact. Rule 73.01(a)(2), V.A.M.R. The trial court enforced the forfeiture clause. Accordingly, the court must have resolved the factual issue of waiver by finding that Long did not waive the requirement of timely payments.

The judgment is supported by substantial evidence and is not against the weight

of the evidence. The forfeiture provision of the contract for deed clearly states that time is of the essence. Both parties testified that although Smith followed a pattern of making partial payments during the month, she never made a late payment. The parties did not consider any installment payment as late because Smith satisfied the full amount of the payment before expiration of the 30–day grace period. Additionally, regardless of how the trial court judged the credibility of each party, both testified that no payment was offered or accepted after their perceived date of Smith's default. The trial court could have found from the evidence that Long never waived the requirement of timely payments because she never accepted less than the full amount due each month, never accepted payments after the expiration of the grace period, and never accepted payments after Smith's default.

The record also contains substantial evidence from which the trial court could have concluded that Long was excused from providing notice of default because Smith abandoned her rights under the contract. Notice of default is excused where the purchaser has abandoned the contract or has acted so as to cause the vendor to reasonably believe he has abandoned the contract. *Flath v. Bauman,* 722 S.W.2d at 128. An actual intention to abandon rights under the contract must exist, but intent to abandon may be established by acts and conduct consistent with an intent to abandon. *Id.* Smith's acts of telling Long in August, 1987 that she was not going to make repairs, did not intend to pay taxes or insurance, and did not want the house, but did not intend to move, could reasonably be interpreted as an abandonment of the contract. The same applies to the offer by Smith to accept a payment of $5,000 in order to move from the property.

The trial court did not err in enforcing the forfeiture clause and thereby finding that either no notice of default was required by Long because she never waived the requirement of timely payment, or that notice was excused because Smith abandoned her rights under the contract.

Thirdly, Smith argues that even if she was in default, the trial court erred in ordering a forfeiture of all money previously paid under the contract because the amount forfeited was grossly disproportionate to Long's actual loss and was, in effect, a penalty. This court rejects Smith's argument that the forfeiture worked a penalty.

Courts enforcing a forfeiture clause in a contract for deed permit the seller who is not in default to cease performance on his part and retain all sums previously paid by the defaulting purchaser without finding an impermissible penalty. *Flath v. Bauman,* 722 S.W.2d at 130; citing *First National Bank of West Plains v. King,* 363 S.W.2d 590, 595 (Mo.1963). The judgment in the instant case is supported by substantial evidence and is not against the weight of the evidence. The payment amounts forfeited by Smith were exactly proportionate to the rental value of the property. Smith rented the property from Long for two years before entering into the contract for deed. Rental payments were $450 per month. Installment payments under the contract for deed remained at $450 per month. In fact, when the contract was executed, rental payments from one previous year were deemed installment payments. Furthermore, these parties, who had previously been in a landlord-tenant relationship, contracted that upon default the buyer shall then become a tenant of the seller and as tenant from month to month shall pay $450 per month as rent. Smith failed to present evidence that Long's actual loss was anything other than the $450 per month rental value of the premises. The trial court did not err in enforcing the forfeiture clause for all sums previously paid by Smith.

In her fourth and final argument, Smith asserts that the trial court erred in entering judgment against her because her default in November, 1987 was excused by Long's prior default. According to Smith, Long defaulted in failing to provide her with a contract for deed to replace the original which was taken from the envelope in her home. This court rejects the argu-

ment because there is simply no evidence to support the contention that Long's failure to replace the original contract would constitute a default under the terms of the contract.

Smith also argues that her refusal to make payments was excused by Long's prior default in failing to show Smith proof that the encumbrance on the property was satisfied, as required by the handwritten provision modifying the contract for deed. In entering its judgment, the trial court necessarily resolved two factual issues: (1) when Smith defaulted by ceasing to make monthly payments under the contract; and (2) when Long was required, by the terms of the handwritten provision, to present proof that the encumbrance to the property had been satisfied and removed. Factual issues are deemed to have been found in accordance with the judgment when there is no request for findings of fact in a court-tried case. Rule 73.01(a)(2), V.A.M.R. Therefore, by entering judgment against Smith for $5,850, the court resolved the first factual issue by finding that Smith defaulted and stopped making monthly payments in August, 1987. Long received the relief she requested, namely 13 monthly payments of $450 each from August, 1987 through August, 1988, totaling $5,850. There was substantial evidence in the record to support this finding. With respect to the second factual issue, the handwritten provision, which defines Long's duty to present proof that the property is free of encumbrances, is somewhat confusing because it does not concisely use the legal terms such as "mortgagor", and it does not indicate the date from which the time periods are to run. (Note that the contract was executed on June 12, 1985, but validated as of August 1, 1984.) In entering judgment in favor of Long, the trial court resolved the factual issue by finding that Long was not in default when Smith defaulted in August. There was substantial evidence in the record to support this finding. Smith believed that the encumbrance was to be fully satisfied in October or November, 1987. Her belief coincides with calculations using August 1, 1984, the earliest of dates mentioned in the contract, as the starting date from which to determine that Long's duty would arise in mid-October, 1987. Using the June 12, 1985 date provides Long with time until early September, 1988 to meet her duty. Either way, the evidence supports the finding that Long had not defaulted when Smith refused to make monthly payments, and therefore, there existed no excuse or justification for Smith's default.

Smith's reliance on *Lancaster v. Simmons*, 570 S.W.2d 742 (Mo.App.1978), *appeal after remand*, 621 S.W.2d 935 (Mo. App.1981), is misplaced. In that case, the purchasers under contract for deed were excused from making tender after the seller placed them in default by failing to present a check to a bank for payment. The seller was, therefore, prevented from considering the purchasers as tenants. Specific performance was granted. *Lancaster* is factually distinguishable from the instant case. Unlike the seller in *Lancaster*, Long did not cause Smith's default.

. This court rejects all four of Smith's arguments under her second point on appeal.

The judgment is affirmed.

All concur.